# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

Records and information stored at premises controlled by
**META PLATFORMS, INC.** ("the Provider"),
headquartered in Menlo Park, California pertaining to
FACEBOOK ACCOUNT USER ID: 100080745460804

Case No. 22-m-715

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

Property described as: Records and information stored at premises controlled by META PLATFORMS, INC. ("the Provider"), headquartered in Menlo Park, California pertaining to FACEBOOK ACCOUNT USER ID: 100080745460804

described in <u>Attachment A, incorporated herein.</u>

over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711, there is now concealed:

See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☐ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☒ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: which constitutes evidence of Title 21, United States Code, Sections 846 and 841(b)(1)(A), Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine.

The application is based on these facts: See attached affidavit.

☒ Delayed notice of _____ days (give exact ending date if more than 30 days): February 3, 2023, is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Rodney Clauss, Deputy US Marshal
*Printed Name and Title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim P. 4.1 by TELEPHONE (specify reliable electronic means):

Date: 8/16/2022

_____
*Judge's signature*

City and State: Green Bay, Wisconsin

JAMES R. SICKEL, U.S. Magistrate Judge
*Printed Name and Title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT **USER ID:** 100080745460804 THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. 22-m-715 <br><br> **Filed Under Seal** |
|---|---|

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Rodney Clauss, being first duly sworn, hereby depose and state as follows:

#### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the account.

2. I am a Deputy United States Marshal with the United States Marshals Service and, as such, am charged with enforcing all laws in all jurisdictions of the United States, its territories, and possessions. I have been a member of the United States Marshals Service for twenty-two (22) years and have investigated multiple fugitive cases. I have had both formal training and participated in numerous investigations to locate federal and state fugitives. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. §

2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 846 and 841(b)(1)(A) have been committed by Amanda K. Pierce ("Amanda"). There is also probable cause to search the information described in Attachment A for evidence of these crimes [[and contraband or fruits of these crimes]], as described in Attachment B.

## PROBABLE CAUSE

5. The United States government, including the USMS, is investigating violations of Title 21, United States Code, Sections 846 and 841(b)(1)(A) committed by Amanda.

6. On July 19, 2022, Amanda was charged in the Eastern District of Wisconsin – Green Bay Division, with one count of Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine. A federal arrest warrant was issued based on that charge.

7. On August 3, 2022, I located an active Facebook account for Amanda. That Facebook account name is "Amanda Lopez". The User ID for that account is 100080745460804.

8. Upon review of Facebook account "Amanda Lopez", I discovered that it is an active Facebook account with one public message posted on August 3, 2022. In addition, Amanda posted twenty public messages in July of 2022. On April 27, 2022 and July 24, 2022,

2

Amanda posted pictures of herself. I compared those Facebook photographs I believed to be Amanda and determined she matched photographs from old Facebook accounts of Amanda and matched Brown County Jail booking photographs of Amanda.

9. Based on my training and experience in locating and apprehending fugitives, the data being sought by this warrant will assist in locating Amanda. Because successful apprehensions often rely on the element of surprise, it is often necessary to attempt an arrest during nighttime or the early morning hours, when most people are sleeping. Further, apprehension tactical plans often change at the last minute based on unexpected movements or other behavior of the target. Therefore, I cannot predict in advance when this data would need to be accessed and would need access to the data at all times of the day or night in order to ensure a safe and successful apprehension.

10. As of the date of this affidavit, Amanda's whereabouts remain unknown, and the arrest warrant mentioned above remains unserved.

11. Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com. Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

12. Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter. This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Each Facebook user is assigned a user identification number and can choose a username.

3

13. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

14. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

15. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user

4

and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

16. Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video and can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

17. Facebook users can use Facebook Messenger to communicate with other users via text, voice, video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats of the date of each call. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

18. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

19. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

20. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

21. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through

5

Case 1:22-mj-00715-JRS   Filed 08/16/22   Page 6 of 12   Document 1

the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

22. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

23. In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about the user's access or use of that application may appear on the user's profile page.

24. Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

25. Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

26. Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between

6

the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

27. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a

7

plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

28. Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

29. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

30. Based on the foregoing, I request that the Court issue the proposed search warrant.

31. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

32. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) &

8

(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

33. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

Rodney Clauss
Deputy US Marshal
US Marshals Service

Subscribed and sworn to before me on August 16, 2022

JAMES R. SICKEL
United States Magistrate Judge

9

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with Facebook account **User ID: 100080745460804** that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

I. **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, Meta is required to disclose the following information to the government for each User ID listed in Attachment A:

(a) All physical location data collected by Meta for the user of the account, including any data collected by Meta's location services via the user's mobile phone or other device, on a real-time or near-real time basis. Meta is required to provide any such data they collect, regardless of the time of day.

II. **Information to be seized by the government**

(a) All data disclosed by Meta pursuant to this attachment. This data shall be made accessible by the provider to the United States Marshals Service 24/7, day or night, and/or emailed to Deputy United States Marshal Rodney Clauss at rodney.clauss@usdoj.gov.

III. **Time for production by provider**

Meta shall begin producing the information required by this attachment within seven (7) days of the date of service of the warrant.

IV. **Duration of production**

Meta shall produce the information required by this attachment for a period of thirty (30) days from the date of issuance of this warrant.